IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

ELIZABETH G. HUDSON                                          PLAINTIFF

V.                                    NO. 13-5122

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration          DEFENDANT

<u>**MEMORANDUM OPINION**</u>

Plaintiff, Elizabeth G. Hudson, brings this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of a decision of the Commissioner of the Social Security Administration

(Commissioner) denying her claim for supplemental security income (SSI) under the provisions

of Title XVI of the Social Security Act (Act). In this judicial review, the Court must determine

whether there is substantial evidence in the administrative record to support the Commissioner's

decision. <u>See</u> 42 U.S.C. § 405(g).

**I.      Procedural Background:**

Plaintiff filed her current application for SSI on August 5, 2010, alleging an inability to

work due to Hashimoto disease, common variable immune deficiency disease (CVID), and

borderline personality disorder. (Tr. 128-131, 150, 154).  An administrative hearing was held on

March 22, 2012, at which Plaintiff appeared with counsel and testified. (Tr. 28-65).

By written decision dated May 23, 2012, the ALJ found that Plaintiff had an impairment

or combination of impairments that were severe - bipolar disorder and borderline personality

disorder. (Tr. 14). However, after reviewing all of the evidence presented, the ALJ determined

that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed

-1-

in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 15). The

ALJ found that Plaintiff retained the residual functional capacity (RFC) to:

> perform a full range of work at all exertional levels but with the following
> nonexertional limitations: the claimant is limited to work with simple,
> routine, repetitive tasks involving only simple, work-related decisions
> with few, if any workplace changes and no more than incidental contact
> with co-workers, supervisors and the general public.

(Tr. 16). With the help of a vocational expert (VE), the ALJ determined that Plaintiff would be

able to perform other jobs, such as kitchen helper/dishwasher, hand packager, and

cleaner/housekeeper/maid. (Tr. 21).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which

considered additional information and denied that request on April 24, 2013. (Tr. 1-6).

Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant

to the consent of the parties. (Doc. 8). Both parties have filed appeal briefs, and the case is now

ready for decision. (Docs. 12, 13).

## II.    Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by

substantial evidence on the record as a whole. Ramirez v. Barnard, 292 F. 3d 576, 583 (8th Cir.

2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind

would find it adequate to support the Commissioner's decision. The ALJ's decision must be

affirmed if the record contains substantial evidence to support it. Edwards v. Barnard, 314 F.

3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports

the Commissioner's decision, the Court may not reverse it simply because substantial evidence

exists in the record that would have supported a contrary outcome, or because the Court would

-2-

have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity.  Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience.  See 20 C.F.R. §416.920.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity.  See McCoy v. Schweiker, 683 F.2d 1138, 1141-42

-3-

(8th Cir. 1982);  20 C.F.R. §416.920.

**III.   Discussion:**

Plaintiff raises the following arguments on appeal: 1) The ALJ failed to fully and fairly

develop the record: 2) The ALJ erred in his RFC determination; and 3) The ALJ erred in his

reliance on the VE findings. (Doc. 12).

**A.      Failure to Fully and Fairly Develop the Record and RFC Determination:**

Plaintiff argues that the ALJ rejected the RFC opinion regarding Plaintiff's mental

impairments, and that in determining Plaintiff's RFC, he was required to obtain another opinion

regarding Plaintiff's mental capabilities.

The ALJ has a duty to fully and fairly develop the record.  See Frankl v. Shalala, 47 F.3d

935, 938 (8th Cir. 1995);  Freeman v. Apfel, 208 F.3d 687, 692 (8th Cir. 2000).  This is

particularly true when Plaintiff is not represented by counsel.  Payton v. Shalala, 25 FG.3d 684,

686 (8th Cir. 1994).  This can be done by re-contacting medical sources and by ordering

additional consultative examinations, if necessary.  See 20 C.F.R. § 404.1512.  The ALJ's duty

to fully and fairly develop the record is independent of Plaintiff's burden to press her case.

Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010).  However, the ALJ is not required to

function as Plaintiff's substitute counsel, but only to develop a reasonably complete record.  See

Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995)("reversal due to failure to develop the record

is only warranted where such failure is unfair or prejudicial").  "The regulations do not require

the Secretary or the ALJ to order a consultative evaluation of every alleged impairment.  They

simply grant the ALJ the authority to do so if the existing medical sources do not contain

sufficient evidence to make a determination."  Matthews v. Bowen, 879 F.2d 423, 424 (8th Cir.

-4-

1989).  "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." <u>Mans v. Colvin,</u> No. 13-cv-2103, 2014 WL 3689797 at *4 (W.D. Ark., July 24, 2014)(quoting <u>Battles v. Shalala</u>, 36 F.3d 43, 45 (8th Cir. 1994).

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).  It is assessed using all relevant evidence in the record. <u>Id</u>.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations.  <u>Guilliams v. Barnhart</u>, 393 F.3d 798, 801 (8th Cir. 2005); <u>Eichelberger v. Barnhart</u>, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." <u>Lauer v. Apfel</u>, 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace.  <u>Lewis v. Barnhart</u>, 353 F.3d 642, 646 (8th Cir. 2003).  "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC."  <u>Id</u>.

In the present case, on September 20, 2010, a Case Analysis form was completed by non-examining consultant Jon Etienne Mourot, Ph.D. (Tr. 408). Dr. Mourot noted that Plaintiff failed to comply with requests for "ADLs" and that the medical records documented non-compliance with treatment "due to failing to show for appointments." (Tr. 408).  Dr. Mourot further noted that Plaintiff admitted to daily use of marijuana, and that a marked impairment of adaptive functioning was not indicated by objective evidence. (Tr. 408). Accordingly, Dr. Mourot

-5-

concluded that Plaintiff's mental impairment was not severe. (Tr. 408).

On November 21, 2010, a Case Analysis form was completed by non-examining consultant, Diane Kogut, Ph.D., who opined that there were no new mental medical records changes, and that the assessment of September 20, 2010 was affirmed, as written. (Tr. 519).

On December 18, 2010, non-examining consultant, Dr. Bill F. Payne, completed a Case Analysis, opining that Plaintiff's physical impairments were non-severe. (Tr. 523).

On April 11, 2011, Thomas Cunningham, APN, from Vista Health, who appears to have seen Plaintiff on various occasions between September of 2010 and November of 2011, completed a Mental RFC Assessment, which was co-signed by Dr. Gary Linker. (Tr. 524). It was concluded in the assessment that Plaintiff had no useful ability to function in several areas on a sustained basis, which was defined as an eight hour work day for five days in a full work week. (Tr. 524). The form consisted of marked boxes indicating Plaintiff's limitations.

In his decision, the ALJ addressed Plaintiff's treatment at various places for her impairments, including Vista Health, Mercy Medical Center, Washington Regional Medical Center, Northwest Medical Center, Rogers Family Practice, Ozark Guidance Center, Dr. Norman Tubb, Dr. Tina Merritt and Dr. Thomas Atkinson. (Tr. 17). The ALJ noted that Plaintiff was non-compliant with her therapy, she admitted to smoking marijuana occasionally, and the ALJ also noted her GAF scores. (Tr. 17). The ALJ also reported that when Plaintiff was compliant with her therapy and her medication, she was better. (Tr.18). The ALJ also addressed the inconsistent statements made by Plaintiff, such as Plaintiff testifying that she had stopped using marijuana, when in fact, November 7 and 10, 2011 therapy notes indicated she continued to regularly use THC. (Tr. 18). The ALJ also noted Plaintiff's inconsistent statements at the

-6-

hearing, when she stated that she had not worked in ten years, but later admitted she had last worked as an exotic dancer in December of 2011. (Tr. 18). Furthermore, the ALJ noted that Plaintiff reported on January 19, April 6 and 12, 2010 (Tr. 326, 329, and 330) and April 29, May 18, and June 15, 2011 (Tr. 572, 574, 575), that she was continuing to work as an exotic dancer. (Tr. 18-19).

The ALJ addressed Mr. Cunningham's opinion, noting that he was not an "acceptable medical source," and also found his opinion to be more limiting than the objective medical evidence of record would support. (Tr. 19). However, the ALJ did not totally reject Mr. Cunningham's opinion, but found that to the extent his opinion was consistent with the medical evidence of record and claimant's testimony, he incorporated those limitations into Plaintiff's RFC as assessed. (Tr. 19). The ALJ reported that he "considered but granted little probative weight" to Plaintiff's testimony, based upon her lack of credibility, and found that the minimal abnormalities reflected a significant functional capacity and not an individual unable to sustain regular and continuing work due to medical determinable impairments. (Tr. 20). He found his RFC assessment was supported by the opinions of the state agency experts and medical evidence of record and that "[t]he treating source opinion that the claimant is more limited than as provided in the above residual functional capacity assessment is not supported by the medical evidence of record and the claimant's testimony." (Tr. 20).

Particularly with respect to the Vista Health records, Plaintiff only began doing better when she went to therapy and took her medication. On December 30, 2009, it was reported that Plaintiff "does not appear extremely motivated for therapy,..." (Tr. 341). On April 6, 2010, Plaintiff was encouraged by Vista Health to be more compliant with therapy sessions so that she

-7-

could continue progressing. (Tr. 329). It was noted on April 7, 2010, that Plaintiff was non-compliant with sessions. (Tr. 321). An April 12, 2010 Vista Health report indicated that Plaintiff was 30 minutes late for her appointment, that she was non-compliant with medication, and had made no progress. (Tr. 326). On June 14, 2010, a Vista Health report indicated that Plaintiff had a pattern of not showing for appointments, then contacting the office in "crisis mode." (Tr. 325). Because of non-compliance with appointments, minimal progress had resulted. (Tr. 325).

On September 1, 2010, Vista Health reported that Plaintiff had been non-compliant with her appointments and that she went to her "new boyfriend's" house without problems. (Tr. 397). It was also reported that she was an "escort date" for two other men. (Tr. 397). She was encouraged to keep her appointment the following week, and no progress was reported. (Tr. 397). On December 6, 2010, Plaintiff reported to Vista Health that she was more depressed and that Wellbutrin no longer seemed to help, but that she was not taking it consistently. (Tr. 608). She was also reported as stopping therapy. (Tr. 608). On January 24, 2011, Plaintiff reported to Vista Health that the medications were generally working well but that the clonozepam was less effective. She was also experiencing family stress. (Tr. 607).

On February 21, 2011, Plaintiff reported to Vista Health that she was more depressed, and it was reported that she had "not been to therapy lately." (Tr. 606). On April 1, 2011 Vista Health reported that Plaintiff had made slight progress towards the treatment plan goals...as evidence by recognizing her need to deal with her issues in order to be able to manage her anxiety and other emotions and making the commitment to attend counseling regularly. (Tr. 577). By April 11, 2011, Vista Health reported that Plaintiff was getting out of the house more, and that she appeared more stable. (Tr. 605). On April 12, 2011, Plaintiff reported to Vista

-8-

Health that she had started exercising and that she thought it was helping her anxiety. (Tr. 576). It was reported that Plaintiff had made significant progress towards the treatment plan goals, and that Plaintiff reported that the treatment she had been receiving gave her hope that she could recover from her abuse. (Tr. 576).  On June 1, 2011, Plaintiff reported that her mood was positive as she had been back on her medicine consistently for a few days, and that she was establishing a significant routine for taking her medicine. (Tr. 573). She continued to be positive on June 15, 2011. (Tr. 572).

On July 19, 2011, Vista Health called Plaintiff and reminded her that it had been about a month since she was last seen, and Plaintiff was seen that day. (Tr. 553). She had her medicine changed and stated that she was able to tolerate this medication much better and that her mood had been stable and she felt a lot less anxious. (Tr. 553).

The next visit to Vista Health is dated September 3, 2011, and Plaintiff reported she had been very sick. (Tr. 570). In addition, she and her boyfriend had a falling out and Plaintiff reported that in spite of this, her mood was stable and she had been relatively stable with her medications. (Tr. 570). Plaintiff was encouraged to be more regular in her attendance of the counseling sessions and to explain why she could not attend when she had to cancel. (Tr. 570). On September 12, 2011, Plaintiff reported good medical compliance and denied any side effects. (Tr. 603). Plaintiff was still reported as doing well on October 11, 2011. (Tr. 568).  In October of 2011, her brother was killed in an auto accident, and on October 27, 2011, Plaintiff reported that she had not taken the Seroquel that had been prescribed for her because she did not like the side effects. (Tr. 566).

On November 7, 2011, Plaintiff reported that she was still having a hard time over her

brother's death, but felt the current regimen helped. She reported continued THC use. (Tr. 602).

On November 10, 2011, Plaintiff admitted to Vista Health to regular use of THC. (Tr. 564).

Plaintiff failed to go to her Vista Health appointments on November 17 and November 22, 2011.

(Tr. 562, 563).  On December 9, 2011, Vista Health reported that Plaintiff needed both her

medications to address her chemical imbalance and regular counseling in order to heal some of

the traumas of her past and maintain a good balance of mood and decrease her anxiety. (Tr. 584).

    In an annual evaluation by Vista Health dated January 6, 2012, Plaintiff reported that she

had felt depressed lately "due to severe recent stress-death of brother, finding out her boyfriend

unfaithful." (Tr. 597). She reported feeling therapy had been helpful. (Tr. 598).

    As stated earlier, in making his RFC determination, The ALJ is to use all relevant

evidence in the record, including medical records, observations of treating physicians and others,

and the claimant's own descriptions of  her limitations.  It is clear from the entire record that

Plaintiff was non-compliant with therapy and medications.  "Failure to follow a prescribed

course of remedial treatment without good reason is grounds for denying an application for

benefits." Brown v. Barnhart, 390 F.3d 535, 540-541 (8th Cir. 2004).  In addition, many of

Plaintiff's complaints regarding her mental difficulties were situational. In fact, in a May 3, 2012

Vista Health Physician Progress Note, the physician reported that Plaintiff was hospitalized at

Northwest Medical Center for awhile "due to situational stresses." (Tr. 705).  See Gates v.

Astrue, 627 F.3d 1080, 1082 (8th Cir. 2010)(Court found no merit to plaintiff's assertion that the

ALJ's RFC determination was based on incorrect assessment of her mental impairments because

the evidence showed that any depression experienced by Plaintiff was situational in nature,

related to marital issues, and improved with a regimen of medication and counseling).

-10-

Based upon the foregoing, the Court finds there is substantial evidence to support the ALJ's RFC determination and credibility findings.

**B.     VE's Testimony:**

Plaintiff argues that the ALJ erred in his reliance upon the VE's testimony, which she alleges conflicted with the <u>Dictionary of Occupational Titles</u> and its companion publication, <u>Revised Handbook for Analyzing Jobs</u> - US Dept. Of Labor, 1991. Plaintiff argues that because the most reasonable interpretation of the ALJ's hypothetical is that Plaintiff functions at a reasoning level of 1, and all three jobs involved reasoning level 2, thus exceeding her mental capabilities.

At the hearing, the ALJ posed the following question to the VE:

> Q: Let me ask you to consider an individual of the claimant's same age, education and work experience who has no exertional limitations but whose work is limited to simple, routine and repetitive tasks involving only simple work related decisions, with few, if any, work place changes and no more than incidental contact with coworkers, supervisors and the general public. Are they any jobs available to an individual with those limits?
>
> A: Okay. The hypothetical that you have presented would place an individual at an unskilled occupation, and I'll look at the – starting at a medium exertion level. One example of a job would be that of a kitchen helper or dish washer. DOT code is 318.687-010. Again, medium exertion level, unskilled, and two. In the U.S. economy full-time, there is approximately 170,000. In Arkansas there is approximately 1,500.
>
> Another job would be that of a hand packager. DOT code is 920.587-018.
>
> . . .
>
> A: Right. It's medium, unskilled, and two. Full-time in the U.S. economy there's approximately 42,000 jobs, and in the state of Arkansas, there's approximately 240. At the light, unskilled one example would be that of a cleaner, housekeeper or maid. DOT code is 323.687-010. It's light, unskilled and two. Full-time in the U.S. economy is approximately 125,000. And full-time in the state of Arkansas is approximately 1,400.

-11-

(Tr. 59-60).  Plaintiff's attorney was then given the opportunity to ask additional questions of the VE, and did so. (Tr. 61).

Clearly, the VE listened to the ALJ's hypothetical question and determined that reasoning level 2 was the appropriate level to be assigned, based upon the ALJ's description.  This reasoning level does not necessarily create a conflict with a limitation on Plaintiff's ability to perform simple, routine and repetitive tasks involving only simple work related decisions, with few, if any, work place changes and no more than incidental contact with coworkers, supervisors and the general public.  "DOT definitions are simply generic job descriptions that offer the approximate maximum requirements for each position, rather than their range." Robeson v. Colvin, No. 13-3109-CV-S-ODS-SSA, 2014 WL 353283 at *4 (W.D. Mo., Jan. 30, 2014). "'The DOT is not a list of job requirements and should not be treated as such.'" Page v. Astrue, 484 F.3d 1040, 1045 (8th Cir. 2007)(quoting Wheeler v. Apfel, 224 F.3d 891, 897 (8th Cir. 2000).

The Court finds that the hypothetical the ALJ posed to the VE fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly,  the Court finds that the VE's responses to the hypothetical questions posed by the ALJ constitute substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude her from performing such jobs as kitchen helper or dish washer, hand packager or cleaner, housekeeper or maid.  Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**IV.    Conclusion:**

Accordingly, having carefully reviewed the record, the Court finds substantial evidence

-12-

supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby affirmed.  The Plaintiff's Complaint should be, and is hereby, dismissed with prejudice.

IT IS SO ORDERED this 5th day of August, 2014.

/s/ Erin L. Setser

HONORABLE ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-13-